# United States Court of Appeals for the Federal Circuit

2007-5175


THE PEOPLE OF BIKINI, by and through the
Kili/Bikini/Ejit Local and Government Council,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - -

2007-5176

ISMAEL JOHN, JACKSON ADING, JAMES GIDEON,
KUNIO JOSEPH, HARRY JACKSON, BOAZ DAVID,
SAM LEVAI, BALIKEN JACKSON, DAVID OBET,
KOSIMA JOHANNES, JINET LANGRUS, EBEL JOSEPH,
GEORGE YOSHITARO, ISAHO LUTHER, BIKENJI PAUL,
NEPTALI PETER, and MOSES ABRAHAM, for Themselves
and for a Class Consisting of the People of Enewetak,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.


Patricia A. Millett, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, argued for plaintiff-appellant in appeal 2007-5175. With her on the brief were Thomas C. Goldstein, Robert K. Huffman, Duncan N. Stevens, and Monica P. Sekhon. Of counsel on the brief was Jonathan M. Weisgall, Jonathan M. Weisgall Chartered, of Washington, DC.

Jonathan G. Cedarbaum, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, argued for plaintiffs-appellants in appeal 2007-5176. With him on the brief were Seth P. Waxman and P. Davis Oliver; Craig E. Estes, of Boston,

Massachusetts, and <u>Daphna Renan</u>, of New York, New York.  Of counsel on the brief was <u>Davor Pevec</u>, Law Offices of Davor Pevec, of Honolulu, Hawaii.

      <u>Brian M. Simkin</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee in appeals 2007-5175 and 2007-5176.  With him on the brief were <u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General, and <u>Jeanne E. Davidson</u>, Director.

Appealed from:  United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2007-5175

THE PEOPLE OF BIKINI, by and through the
Kili/Bikini/Ejit Local and Government Council,

Plaintiff–Appellant,

v.

UNITED STATES,

Defendant–Appellee.

------------

2007-5176

ISMAEL JOHN, JACKSON ADING, JAMES GIDEON,
KUNIO JOSEPH, HARRY JACKSON, BOAZ DAVID,
SAM LEVAI, BALIKEN JACKSON, DAVID OBET,
KOSIMA JOHANNES, JINET LANGRUS, EBEL JOSEPH,
GEORGE YOSHITARO, ISAHO LUTHER, BIKENJI PAUL,
NEPTALI PETER, and MOSES ABRAHAM, for Themselves
and for a Class Consisting of the People of Enewetak,

Plaintiffs–Appellants,

v.

UNITED STATES,

Defendant–Appellee.

Appeals from the United States Court of Federal Claims in 06-CV-288 and 289, Judge Christine O.C. Miller.

_____

DECIDED:   January 29, 2009

_____

Before LOURIE, RADER, PROST, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The people and descendants of the Bikini and Enewetak Atolls seek just compensation for the taking of their land and their legal claim by the United States

government. The Nuclear Claims Tribunal has awarded, but not completely funded, compensation for the Atolls' inhabitants due to bomb testing in the 1940s and 1950s. Because the parties clearly and unambiguously agreed to extinguish any judicial jurisdiction over the claims presented in these appeals, this court affirms the United States Court of Federal Claims' dismissal of these complaints.

I.

The Court of Federal Claims sets forth the background of this dispute in great detail. See People of Bikini v. United States, 77 Fed. Cl. 744 (2007); John v. United States, 77 Fed. Cl. 788 (2007). Accordingly, this opinion will only discuss those facts necessary for these appeals. The Bikini and Enewetak Atolls are two of twenty-nine atolls and five islands comprising the Marshall Islands. In December 1947, the United States selected these Pacific Ocean atolls as sites for the Nuclear Testing Program. The United States removed the inhabitants of these islands from their homes. Many refugees suffered deprivations in their new conditions. Meantime the weapons testing programs devastated the islands and lagoon, scattering massive amounts of radioactive material.

The Plaintiffs–Appellants represent the people and descendants of the Bikini and Enewetak Atolls. In the early 1980s, both groups filed claims in the United States Court of Claims. The Plaintiffs sought just compensation for the Fifth Amendment taking of their land and damages for the United States' breach of its fiduciary duties. During this litigation, the governments of the United States and the Marshall Islands reached a settlement agreement to compensate the refugees and victims. The United States presented this Compact of Free Association to Congress in 1984. The Compact of Free

Association Act of 1985 (the Compact Act) became law on January 14, 1986.  Pub. L. No. 99-239, 99 Stat. 1770 (1986).  Section 177(a) of the Compact Act sets forth the United States' acceptance of responsibility for the damage to property and persons resulting from the Nuclear Testing Program.  Section 177(b) provides for the settlement of all claims past, present and future that are based upon, arise out of, or are in any way related to the Nuclear Testing Program.  The United States and the Government of the Marshall Islands entered into a further agreement to implement Section 177 of the Compact Act — the Section 177 Agreement — on October 21, 1986.  The Compact Act specifically references and incorporates the provisions of the Section 177 Agreement into the Compact Act.  Compact Act, § 103(g).  In view of the Compact Act and the Section 177 Agreement, the successor to the Court of Claims, the United States Claims Court, held that the United States' consent to be sued under the Tucker Act had been withdrawn with respect to the pending takings claims and dismissed.  Juda v. United States, 13 Cl. Ct. 667 (1987).

The Section 177 Agreement created a Nuclear Claims Tribunal to render final determination upon all "past, present and future" claims related to the Nuclear Testing Program.  Congress committed $150 million to initiate a trust fund to support the Tribunal's operations and awards.  Section 177 Agreement, Art. I, § 1.  Congress designated $45.75 million of that amount for the payment of awards.  Id. at Art. II, § 6(c).  Even from its inception, many critics recognized that the Tribunal fund would not satisfy all of the claims.

On August 3, 2000, the Tribunal awarded the Plaintiffs–Appellants, the People of Enewetak, $385,894,500, including $244,000,000 for past and future loss of Enewetak

Atoll, $107,810,000 for restoration costs and radiation cleanup, and $34,084,500 for hardships suffered during the relocation from the atoll. In February 2002 and 2003, the Tribunal paid only $1,078,750 and $568,733 on those awards — less than 1% of their total award.

In March 2001, the Tribunal awarded the Plaintiffs–Appellants, the People of Bikini, $563,315,500 in compensation, including $278,000,000 for the past and future loss of their land. Due to inadequate funding, however, the Tribunal paid only $1,491,809 in 2002, recognizing that the fund is "insufficient to make more than a token payment." The fund made a second payment of $787,370.40 in 2003, approximately 0.4% of the total award. As of October 2006 only $1 million remained in the Tribunal fund.

Article IX of the Section 177 Agreement provides an avenue for seeking additional funding from Congress. A "Changed Circumstances" petition can be submitted to Congress if "such injuries render the provisions of this Agreement manifestly inadequate." Section 177 Agreement, Art. IX. Article IX goes on to say that it "does not commit the Congress of the United States to authorize and appropriate funds." Id. The Government of the Marshall Islands submitted a Changed Circumstances petition to Congress requesting additional funding in 2000. To date, Congress has not acted on that petition.

In 2006, the Plaintiffs–Appellants brought suit in the United States Court of Federal Claims seeking just compensation for deprivation of property rights under the Fifth Amendment. The Plaintiffs based their takings claims on inadequate funding of the Tribunal's award programs (claims-based taking) and the deprivation of their land during

the testing (land-based taking). Before the United States Court of Federal Claims, the Appellants also asserted various contract and implied contract theories.

The Court of Federal Claims granted the Government's motion to dismiss primarily because the Section 177 Agreement deprives any court of the United States of jurisdiction over these claims. The trial court also observed that nonjusticiable political questions, ripeness doctrines, statute of limitations bars, collateral estoppel bars, and other deficiencies in the claim prevented any grant of relief. The Appellants timely appealed to this court. On appeal, this court received only the land-based and claims-based taking claims.

II.

This court reviews the dismissal of a complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims without deference. See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004); Shearin v. United States, 992 F.2d 1195, 1195 (Fed. Cir. 1993).

The Section 177 Agreement states: "This Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program . . . ." Section 177 Agreement, Art. X (emphasis added). This enacted Agreement has the force of law. Compact Act, § 175.

Addressing the "United States Courts," Article XII of the settlement agreement instructs, "All claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such claims, and any such claims pending in the courts of the United States shall be

dismissed." Section 177 Agreement, Art. XII (emphasis added). Article XII thus represents the parties' agreement to extinguish any judicial power to hear these claims.

This court proceeds from the vantage point that constitutional rights and "wrongs," if at all possible, deserve a forum for hearing and relief in the U.S. judicial system. At the same time, this court acknowledges that its first obligation is to ensure that it has power and authority to hear a claim, even a constitutional claim, in the first place. See Ex parte McCardle, 74 U.S. 506, 512 (1868) ("The first question necessarily is that of jurisdiction.").

To be specific, the United States Constitution divides power between the legislative, executive, and judicial branches. Judicial power is vested in one Supreme Court and "in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. 3, § 1. By "ordain," the Constitution meant to give the legislature the power to set the jurisdiction and the limits of judicial authority for the "inferior Courts." In addition, the legislative authority to establish the inferior courts includes the power to limit their jurisdiction and powers. Because Congress "ordain[s] and establish[es]" all courts under the Supreme Court, the legislative authority includes the power to set their jurisdiction. And just as Congress can grant jurisdiction, Congress can take it away. See Ex parte McCardle, 74 U.S. at 514 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Thus, before proceeding to hear any claim, even a constitutional claim, this court must ensure that it has jurisdiction to act.

The Section 177 Agreement is a settlement agreement. By its own terms, it constitutes "the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program." Section 177 Agreement, Art. X, § 1. As part of the agreement, the Government of the United States committed $150 million to the fund, setting aside $45.75 million for the payment of monetary awards rendered by the newly created Nuclear Claims Tribunal.

On appeal, the parties do not contest the amount awarded by the Nuclear Claims Tribunal. Rather they seek enforcement of the award — in spite of the Claims Tribunal's award of amounts beyond the funding limits of the settlement agreement. Moreover the parties contemplated the prospect of inadequate funding for full compensation when entering into the Section 177 Agreement. In the event that "such injuries render the provisions of this Agreement manifestly inadequate," Article IX provides an avenue for submitting a changed circumstances petition to Congress.

The "Changed Circumstances" provision acknowledges that "this Article does not commit the Congress of the United States to authorize and appropriate funds." Section 177 Agreement, Art. IX. The parties expressly agreed to this procedure and in doing so trusted the U.S. Congress to weigh and evaluate and act upon any changed circumstances. Thus, the settlement agreement entrusted the funding remedy to a procedure outside the reach of judicial remedy.

Indeed on that point, the language of the settlement agreement is clear: "All claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such claims, and any such claims

pending in the courts of the United States <u>shall be dismissed</u>." Section 177 Agreement, Art. XII (emphasis added). This statement represents not only the United States' removal of its consent to be sued in the courts over these claims but also the claimants' waiver of their right to sue over these claims in any U.S. court. Thus, this court has no authority in this matter, except to dismiss for lack of jurisdiction.

This case does not present any statutory ambiguities about the jurisdiction or, actually, the absence of jurisdiction to entertain the Bikini and Enewetak taking claims. This court notes that, in <u>Blanchette</u>, the Supreme Court refused to resolve ambiguities in the statute about Tucker Act jurisdiction to avoid encountering "grave doubts" about the constitutionality of the Rail Act itself. <u>Blanchette v. Connecticut Gen. Ins. Corps.</u>, 419 U.S. 102, 134 (1974). This court does not need to engage in any caution due to ambiguities. The language of the Section 177 Agreement presents no ambiguities whatsoever. Therefore, this court does not need to follow the careful course of the <u>Blanchette</u> case.

Moreover, unlike the <u>Blanchette</u> case, this case involves a settlement negotiated between the United States and the Government of the Marshall Islands. The power to conduct foreign relations includes the power to recognize a foreign sovereign and the authority to enter into an international claims settlement on behalf of nationals. <u>See</u> <u>United States v. Pink</u>, 315 U.S. 203, 229-30 (1942). The Plaintiffs–Appellants, the People of Enewetak, challenge the validity of that espousal. However, that challenge raises a political question beyond the power of this or any court to consider. <u>Id.</u> at 229 ("What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political

department of the government." (quoting <u>Guaranty Trust Co. v. United States</u>, 304 U.S. 126, 137 (1938))).

This court observes that its sense of justice, of course, makes it difficult to turn away from a case of constitutional dimension. However, the same sense of justice recognizes that this court cannot act without jurisdiction. In sum, this court cannot hear, let alone remedy, a wrong that is not within its power to adjudicate. The sweeping language of the Section 177 Agreement withdraws jurisdiction of the U.S. courts. Thus, this court affirms the United States Court of Federal Claims' dismissal of these complaints.

<u>AFFIRMED</u>